UNITED STATES, Appellee

v.

STANLEY F. HORNER, Private First Class, U. S. Army, Appellant

2 USCMA 478, 9 CMR 108

No. 1031

Decided May 8, 1953

LT COL George M. Thorpe, U. S. Army, and 1ST LT Michael E. McGarvey, U. S. Army, for Appellant.

LT COL Thayer Chapman, U. S. Army, and 1ST LT Kenneth A. Howard, U. S. Army, for Appellee.

## Opinion of the Court

GEORGE W. LATIMER, Judge:

This case is before us on petition for grant of review brought by the accused and involves substantially the same issue presented in United States v. Young (No. 1015), 9 CMR 100, this day decided.

The accused was tried by general court-martial in Korea for desertion with intent to avoid hazardous duty which the parties agree is a capital offense. He was found guilty and sentenced to a dishonorable discharge, total forfeitures and confinement at hard labor for ten years. The convening authority approved and the board of review in the office of The Judge Advocate General, United States Army, affirmed. We granted accused's petition for review, limiting the scope thereof to the issue of whether the use of two depositions constituted prejudicial error.

On December 27, 1951, the accused was a member of the Third Platoon, Company F, 7th Infantry Regiment, 3d Infantry Division. At that time his platoon was on the main line of resistance facing the Chinese Communist forces in Korea. At about 1:00 p.m. on that date he was informed by his platoon commander that he was to be a member of an ambush patrol that night and he was ordered to be present for such duty. Accused replied that he would not go on the patrol. Just prior to this conversation the accused had been contacted by the squad leader who told him he had been selected to go on the patrol and not to leave the hill on which the platoon was located. At approximately 2:00 p.m. the platoon leader, after receiving a report that accused was missing, directed that a search be made of the area. The search was conducted but accused was not found. Sometime near 3 o'clock that afternoon he was seen proceeding toward the rear.

**479**

No one had authorized him to leave. At 5:00 that evening accused was found in the area of F Company kitchen trains, dazed and apparently intoxicated. The kitchen area was approximately 6,500 yards from the company's position on the line. The patrol left that night at 9:00 and the accused did not accompany it.

The foregoing evidence can be credited to the five witnesses none of whom indicated any hostility toward accused. As a matter of interest, three were used as character witnesses for the accused and the other two did not answer questions as though they might be persecutors. The platoon leader, a lieutenant, testified to directing the accused to accompany the patrol and to receiving a reply to the effect that the accused would not go. The assistant platoon commander and the squad leader testified to having heard the order but neither heard the reply. All three testified to accused's absence and his failure to accompany the squad. These are the three witnesses who testified for the benefit of the accused on matters in extenuation and mitigation.

A major from the 2d Battalion, 7th Infantry Regiment, testified that just as he was beginning to eat his evening meal on December 27, 1951, he received a report concerning an enlisted man in the area of F Company kitchen trains. He proceeded to the reported place where he found the accused slumped over the steering wheel of a one-quarter ton truck. Accused was in a helpless physical condition caused by overindulgence in intoxicating liquor. The witness ordered him removed from the truck to a tent because the weather was cold and complications might have resulted from exposure.

The last of the five principal witnesses was a Private First Class from another company. He testified that he knew the accused and that at about 3:00 p.m. the accused was walking away from the main line of resistance towards the rear.

The defense offered no evidence to deny, explain, or question any of the related evidence and there are no inconsistencies, improbabilities or inaccuracies in the testimony. Moreover, there is nothing in the record to suggest bias, prejudice or interest on the part of any witness or witnesses, so it is indeed impossible to believe that a court-martial would have returned any finding other than one of guilt.

The error in the procedure occurred because there were two depositions admitted in evidence. The first was offered and admitted prior to the findings, and the second, subsequent thereto. We shall, therefore, discuss the effect of each separately. The testimony in the one admitted prior to findings was given by a sergeant who, at the time of trial, had been returned to the United States on rotation. At the time it was offered defense counsel stated that he had no objection to its admission. In the deposition the sergeant corroborated the following portions of the testimony given by the other witnesses: that accused was in F Company kitchen area; that he was intoxicated; that he was removed to a tent and that he remained there until the following morning.

As in the Young case, supra, we are concerned with the admissibility of deposition evidence touching on the guilt of an accused in a capital case, and in view of the similarity of proceedings the principles announced in that decision are controlling here. Here again there was no directive from the convening authority that this case be treated as non-capital, and no express consent on the part of the accused that the deposition might be received against him. Accordingly, the admission of the evidence contained in the deposition was error. Having so determined, we turn to a discussion of the prejudicial effect of the error upon the substantial rights of the accused, as required by Article 59(a), Uniform Code of Military Justice, 50 USC § 646.

With the exception of one possibility which we later explore, the following quotation from United States v. Young, supra, is applicable here:

". . . The evidential posture of the case without the deposition was this: Two witnesses had testified to the giving of the order. There was

**480**

no attack on their credibility, no discrepancies between their versions, no conflict in their testimony to reconcile, no inherent inconsistencies or improbabilities in their evidence and at least one of these witnesses was without any reason to be biased or hostile. The defense in no way denied, weakened nor rendered doubtful the facts related by these witnesses and certainly it cannot be asserted successfully that the Government placed before the court-martial inconsistent versions. Under these circumstances if the court-martial was to find against the Government on that issue it would be without reason, justification or excuse. Any fair-minded and reasonable person would have been compelled to find against the accused with or without the evidence contained in the deposition. Accordingly, we find error, but even though we test for the presence of prejudice by any rule announced in any case, we still are unable to find it present here."

In this instance there were three witnesses who testified to the accused's having been told he was to leave on the patrol and that shortly thereafter he was absent without authority. These witnesses bore no ill will towards the accused and there were no discrepancies between their versions nor inconsistencies in their testimony. Two witnesses testified to the accused's presence in the rear area and they could not be characterized as hostile. All of the evidence is reasonable, undisputed and unattacked. Accordingly, for us to find prejudice in this case, we would be required to assume without reason that an inconsequential bit of evidence became of prime importance.

The one possibility of prejudice arising out of the use of the deposition might be found in the following procedure. At one point during the prosecution's presentation of evidence, but prior to the admission of the deposition, trial counsel moved that the specification, which had alleged a four-hour absence, be amended to state an absence from 1:00 p.m. December 27, 1951, to on or about December 28, 1951. The motion was denied by the law officer. It was then the first deposition was offered and received in evidence. The only item on the deposition which was not established conclusively by other testimony was that the accused remained in the tent in the F Company kitchen area until the following morning. However, in view of the rulings of the law officer, we do not believe any prejudice is present here. After the deposition had been received, trial counsel renewed his motion for amendment of the charges, upon the grounds that the evidence was then sufficient to show that accused was in the kitchen train area until the 28th of December. The motion was again denied, and by this denial any prejudice which might have resulted from doubtful evidence being strengthened by the deposition was prevented.

The admission of the second deposition causes us little concern for four reasons. First, it was used only to assist the court-martial in arriving at an appropriate sentence and had no influence on the findings of guilty; second, it was taken at the request of the accused; third, if it were necessary to do so to reach a just result, we could bottom our holding on express consent; and fourth, the evidence would not tend to increase the punishment. The first three reasons are supported by the following colloquy which is quoted from the record:

"TC: The prosecution offers in evidence Prosecution's Exhibit Two for identification, which is the deposition of Sergeant First Class Marion E. Hamby. The testimony of this witness is offered in deposition form due to the fact that the witness has been rotated.

"DC: This is a deposition taken by the defense. I do not object to its admission in evidence at this time.

"(The law officer examined the document)

"LO: Prosecution's Exhibit Two for identification is admitted in evidence as Prosecution's Exhibit Two.

"TC: This deposition was taken for the defense. The interrogatories

**481**

are the questions asked by the defense, the cross-interrogatories are the questions asked by the prosecution. Does the defense counsel agree that I read the entire deposition? "DC: No objection."

In answer to the first question asked by counsel for accused the witness stated that accused was "half-■■■■■■■ ■ cracked." The witness was then asked to explain his reasons for that conclusion. The sum and substance of his testimony, while not particularly edifying, told the story of a soldier whose actions showed his mentality was deficient and impaired by alcoholism. While it varied slightly from the testimony of other character witnesses, it was not inconsistent with accused's unsworn statement. It did not show criminal tendencies nor immoral habits, rather it painted a picture of pathos. It described a soldier who because of mental deficiencies and over-indulgence was barely able to comprehend the nature and seriousness of the offense committed by him. While it is impossible to measure the precise effect such testimony might have on members of a court-martial experience gained from reading records causes us to believe it created sympathy for him. While we cannot state with assurance that the evidence reduced the severity of the sentence, we are convinced it did not increase the punishment.

Finding no material prejudice, we affirm the decision of the board of review.

Chief Judge QUINN concurs.

BROSMAN, Judge (concurring in the result):

I concur in result. See generally my separate opinion in United States v. Young (No. 1015), 9 CMR 100, decided this date.