UNITED STATES, Appellee

v.

FRANK C. GANN, Corporal, U. S. Army, and ALBERT SOMMER,
Corporal, U. S. Army, Appellants

3 USCMA 12, 11 CMR 12

No. 1425

Decided July 3, 1953

LT COL George M. Thorpe, U. S. Army, 1ST LT William S. Maxwell, U. S.
Army, and 1ST LT Michael E. McGarvey, U. S. Army, for Appellants.

LT COL Thayer Chapman, U. S. Army, and 1ST LT Robert A. Forman,
U. S. Army, for Appellee.

PAUL W. BROSMAN, Judge:

Here, following common trial by general court-martial, each of the two accused was convicted of desertion with intent to avoid hazardous duty[1] and willful disobedience of the lawful order of a superior noncommissioned officer.[2] Both alleged offenses were committed in Korea. The convening authority reduced the findings of guilty of desertion with intent to avoid hazardous duty to guilty of absence without leave,[3] to which lesser offense each had pleaded guilty, affirmed the convictions of willful disobedience, and substantially reduced the sentences imposed. Subsequent to affirmance of the findings and sentences by a board of review, this Court granted petitions for further review filed by each accused, but restricted consideration to a single question:

"Whether the deposition introduced by the prosecution was admissible under Article 49 (d)."

II

By its nature, the question before us renders unnecessary a discussion of the basic facts giving rise to these prosecutions. However, the following matters must be noted. At the trial there was introduced in evidence by the prosecution two depositions of a Sergeant Nagle to the effect that the deponent had ordered each accused to gather his gear and move to the front line, and that each had refused to comply with the order. These statements, of course, related only to the charges of willful disobedience, and not to those alleging desertion with intent to avoid hazardous duty. Article 49 (d) of the Code, supra, 64 Stat 123, 50 USC § 624, relating to depositions, among other restrictions, prohibits their use save "in any case not capital." The question then is whether the depositions admitted at the trial below were—under all applicable considerations—received in evidence in a "capital *case*." If so, their admission unquestionably was error.

We do not doubt that the charges of desertion with intent to avoid hazardous duty were—standing alone—"capital cases." See Executive Order 10247, May 29, 1951; Uniform Code, Article 85 (c), supra. The latter source provides that the penalty of death may be adjudged for desertion "in time of war." The Executive Order adverted to suspends the Table of Maximum Punishments, Manual for Courts-Martial, United States, 1951, as to specified offenses, and among those listed is the crime of desertion with intent to avoid hazardous duty. Therefore, the court-martial here was █ free to impose the death penalty under Article 85 (c), if the current Korean conflict is a "war" within the meaning of that Article. The answer to this question must be in the affirmative. The factors which make certain offenses—of which the present is one—more heinous and reprehensible in time of war depend upon the existence *in fact* of substantial armed hostilities—regardless of whether those hostilities have been formally declared to constitute "war" by action of the Executive and Congress. Hamilton v. McClaughry, 136 F 445. Certainly the extent of the conflict in Korea warrants its treatment, for purposes of the Code and Manual, as a "war." This was the conclusion reached in the well-reasoned and soundly considered opinion of an Army board of review in CM 347025, Anderson, 1 CMR 345. See also, United States v. Gilbert, 9 BR–JC 183, and our decision in United States v. Bancroft (No. 1139), 3 USCMA 3, 11 CMR 3, decided this date.

However, the capital offenses charged against these accused were joined with willful disobedience █ charges, which were not, of course, capital. This brings to bear that portion of paragraph 145a of the Manual, supra, which says, in discussing the use of depositions, that "In a trial upon several specifications, the proceedings as to

---

1. Uniform Code of Military Justice, Article 85, 50 USC § 679.

2. Id., Article 91, 50 USC § 685.

3. Id., Article 86, 50 USC § 680.

each constitute a separate 'case'." Applied to the instant problem, this paragraph means that each of the two charges against each accused represented, under Article 49 (d) of the Code, supra, a separate case—and the conclusion must follow that, since the depositions here were received in connection with the willful disobedience charges only, they were not admitted in a "capital case."

Appellate defense counsel concedes that this is the effect of paragraph 145a of the Manual, but contends that this paragraph —in the particular pertinent here—contravenes the intent of Congress and is invalid. If the Manual provision is in conflict with the Code, the latter must indeed control, and the admission of these depositions constituted error. United States v. Clark (No. 190), 1 USCMA 201, 2 CMR 107, decided February 29, 1952; United States v. Wappler (No. 1457), 2 USCMA 393, 9 CMR 23, decided April 15, 1953. It is argued that Congress, in its choice of the word "case" in Article 49 (d), used the term to denominate—in perhaps a collective sense—*the entire proceedings* against an accused. This does not appear in the Article itself, for its use of the word, viewed in context, gives to us, at least, no indication of an intent pointing in one direction or the other. Other Articles in the Code are suggested in which "case" is used in such a way as to indicate that—as used—it has reference to the *entire* criminal proceedings. However, what a word may mean in one context is hardly conclusive of the purpose behind its use in an entirely different one. It may be suggested in this connection that this Court, under Article 67 (b) of the Code, 64 Stat 129, 50 USC § 654 (b), reviews "cases." However, in very many of them we consider and act on asserted errors touching one or more—but not all—of the charges and specifications. This serves to direct attention to the essential severability of multiple charges. Furthermore, although but a

single inclusive sentence is adjudged following a military prosecution, the sentence—where the accused has been convicted of multiple separate offenses —is the totality of punitive action adjudged for *each* of the separate offenses. Manual, supra, paragraph 76a (8). And, upon review, of course, the convening authority,[4] a board of review,[5] or this court,[6] may affirm convictions under some charges and specifications and disapprove others heard at the same trial.

It is also urged that Congress, in Article 49 (d), manifested a desire to preserve to accused persons, in all capital cases, the right of *personal* confrontation of witnesses. With this we most heartily agree. But, from this premise, the argument concludes that this intent of Congress would be abridged by permitting the admission of depositions as to non-capital offenses when joined for trial with capital offenses. In such case, it is said, the triers of fact might be induced, through such proof of the noncapital offense, to impose the death penalty where otherwise it perhaps would have adjudged a less severe sentence. Although the latter premonition as to a court-martial's action may be supported by experience—which we doubt—we think that closer scrutiny requires acknowledgment that the evil, if such it is, has its roots not in the admission of depositions in the noncapital case, but rather in the very joinder for trial of the noncapital with a capital offense. No one has suggested that such a joinder is unlawful—for the excellent reason that under existing law, it is quite definitely not. Also —we might suggest—the point made by defense is distinctly weakened when one considers that there is no legal bar to proof of previous convictions prior to consideration of the sentence to be imposed in a capital case, and such convictions, depending on their character, conceivably could have a great deal to do with the severity of the sentence actually adjudged.

In sum, we are unable to perceive any indication whatever that the Man-

4. Uniform Code, supra, Article 64, 50 USC § 651.

5. Id., Article 66, 50 USC § 653.
6. Id., Article 67, 50 USC § 654.

ual draftsmen, in paragraph 145a, have construed "case" in a manner inconsistent with Congress' use of the word in Article 49d of the Code. In the absence of such conflict we are bound to apply the provision of the Manual. *United States v. Lucas* (No. 7), 1 USCMA 19, 1 CMR 19, decided November 8, 1951. Accordingly, there was no error in the use of depositions in the trial of the accused here.

### III

Finally, appellate defense counsel argues that if the depositions were properly received in evidence— as we have held them to have been—the law officer was under an affirmative duty, as spelled out in paragraph 145a of the Manual, to instruct the court in open session that its members were permitted to consider them only with respect to the noncapital offense, that of willful disobedience. However, the portion of the Manual paragraph, to which appellate defense counsel alludes, does not require such an instruction in this case. It is only when a deposition is relevant to the *capital,* as well as the *noncapital* offense, that this instruction is demanded. Here the willful disobedience offenses occurred some six days after the alleged desertions. Manifestly, therefore, the content of the depositions was quite irrelevant to the alleged desertions.

For the reasons stated, the decision of the board of review is affirmed.

Chief Judge Quinn and Judge Latimer concur.

