UNITED STATES, Appellee

v.

WALTER G. ALDRIDGE, Private E–1, U. S. Army, Appellant

4 USCMA 107, 15 CMR 107

No. 2886

Decided April 2, 1954

LT COL Herman P. Goebel, Jr., U. S. Army, and 1ST LT David J. Conroy, U. S. Army, for Appellant.
LT COL William R. Ward, U. S. Army, for Appellee.

### Opinion of the Court

GEORGE W. LATIMER, Judge:

Accused was found guilty by a general court-martial of three separate offenses, namely, being drunk while on post as a sentinel in violation of Article 113, Uniform Code of Military Justice, 50 USC § 707; disrespect toward a superior officer in violation of Article 89, Uniform Code of Military Justice, 50 USC § 683; and assault with a dangerous weapon in violation of Article 128, Uniform Code of Military Justice, 50 USC § 722. He was sentenced to a

dishonorable discharge, total forfeitures, and confinement at hard labor for two years. Because of the admission of incompetent evidence, which was noticed by the Staff Judge Advocate, the convening authority, as to the first offense, approved only the lesser offense of drunk on duty as a member of the guard in violation of Article 112, Uniform Code of Military Justice, 50 USC § 706. In addition, he disapproved the findings of disrespect, approved the offense of assault with a dangerous weap-

on, and affirmed the sentence. A board of review in the office of The Judge Advocate General, United States Army, sustained the findings and sentence. We granted accused's petition for review to determine whether the admission of two depositions in evidence during the trial was prejudicial error and, if so, whether the action of the convening authority purged the prejudice.

In making this preliminary statement of facts, no reference will be made to the contents of the questioned depositions. On November 23, 1952, accused, who was stationed in Korea, was granted an afternoon pass which entitled him to be absent from his unit until 6:00 o'clock that evening. Together with some friends, he proceeded to a nearby town and there indulged in considerable drinking. As the group was returning to the unit area about 5:30 pm, accused was informed that he was to stand guard that night. His tour of duty was to extend from 8:00 pm to 10:00 pm. Shortly after 8:00 pm, he appeared at the officers' quarters, which were within the limits of post number 1. He informed his company commander that he had been assigned as a member of the guard and intended to do a good job. He appeared sober at the time, but when the Captain next saw him at about 9:00 pm, he was highly intoxicated.

Article 113 of the Code, supra, which makes punishable the act of being found drunk while on duty as a sentinel, provides that when the offense is committed "in time of war" the accused may be sentenced to death. In United States v. Bancroft, 3 USCMA 3, 11 CMR 3, we held that within the meaning of the terms used by Congress in enacting the Uniform Code of Military Justice, this country is in a state of war. We there stated that:

". . . a finding that this is a time of war, within the meaning of the language of the Code, is compelled by the very nature of the present conflict; the manner in which it is carried on; the movement to, and the presence of large numbers of American men and women on, the battlefields of Korea; the casualties involved; the sacrifices required; the drafting of recruits to maintain the large number of persons in the military service; the national emergency legislation enacted and being enacted; the executive orders promulgated; and the tremendous sums being expended for the express purpose of keeping our Army, Navy and Air Force in the Korean theatre of operations."

The conclusion we therein reached that a formal declaration of war by Congress is not essential to the creation of a "time of war" for our limited purpose was reaffirmed in United States v. Gann, 3 USCMA 12, 11 CMR 12. The Table of Maximum Punishments having been suspended by Executive Order 10247, May 27, 1951, the death penalty could have been imposed. We are, therefore, confronted with a situation where the accused was tried for a capital offense.

We have previously expressed our views on the admissibility of depositions in a capital case. United States v. Young, 2 USCMA 470, 9 CMR 100. The substance of the codal and the Manual provisions reviewed in that decision amounts to this: Assuming that the foundation for the admission of depositions in evidence has been laid (which is conceded here), they are admissible "in a capital case" only (1) where the convening authority prior to trial directs that the case be treated as noncapital, in which event the death penalty may not be imposed, or (2) where the accused expressly consents to their admission in evidence.

In this case, the convening authority did not direct that the case be treated as noncapital. Furthermore, facts and circumstances are not disclosed by the record which would bring about that result prior to the use of the depositions. While the convening authority may have intended to limit the Government, he took no action and we must, therefore, reject the first of the two possible alternatives.

The second alternative must likewise

be rejected. The Manual for Courts-Martial, United States, 1951, provides that with the express consent of the accused presented in open court, but not otherwise, deposition testimony may be introduced in a capital case. We do not believe the record establishes any affirmative act on the part of accused or his counsel which could be construed as a consent to the admission of these depositions. It is not shown clearly that they consciously intended to waive a substantial right granted to the accused. While defense counsel objected to specific questions propounded in the deposition, he neither objected nor consented to the admission of the more important of these depositions as a deposition. He merely stated, "No objection," when queried by the law officer concerning the second deposition. We do not interpret such an answer as meeting the requirements for admissibility set out in the Manual. Its language narrows admissibility to those instances when the accused expressly consents in open court and counsel's comment of no objection falls far short of that requisite. Having rejected the contention that either alternative condition for receiving the depositions in evidence is present, we conclude that it was error to admit them and have their contents read to the court-martial. United States v. Young, supra; United States v. Horner, 2 USCMA 478, 9 CMR 108.

We encounter little difficulty in concluding the error prejudiced the accused at the trial level. The first deposition was given by Corporal Daniel Dwyer who served as sergeant of the guard on the evening of November 23, 1952. His testimony established substantially that the accused was posted as a guard; that he was not visibly intoxicated when posted; and that he was actually on his post when he was found drunk. The rest of the testimony in the deposition related to the other offenses, which do not concern us here. The evidence in the second deposition was furnished by Lieutenant Gordon K. George, who was the company duty officer on the night in question. He testified that he had relieved accused from guard duty about 9:00 pm on

November 23, 1952, because accused was obviously and grossly intoxicated. The remainder of his testimony is of no importance as it involved the offense of disrespect to a superior officer which was disapproved by the convening authority.

The defense offered by the accused was to the effect that he became highly intoxicated on the afternoon of November 23, 1952; that he was notified at about 5:30 pm by Corporal Dwyer that he (accused) was to stand guard that night; that he asked to be designated as one of the two supernumerary members of the guard; that he was told that he would be so assigned; and, that he thereafter passed out and remembered nothing about his activities until he was awakened and informed he was under arrest. In summary, accused defended on the theory that he was not posted as a sentinel.

The evidential posture of the case was such that the deposition of Corporal Dwyer was essential to the prosecution's case, for his testimony furnished the essential fact that accused was posted as a sentinel. Without the deposition there would have been insufficient evidence to permit the case to go to the court members for a finding of guilty on the alleged offense. Here we do not have a situation where the deposition added little, if any, measurable weight to the prosecution's case. On the contrary, we are presented with a problem where the deposition evidence proved the Government's case, at least as to one element. That is prejudice.

The Staff Judge Advocate who reviewed the record for the convening authority sensed the error and recommended curative action. The recommendation was adopted and we are thus posed with the problem of determining whether the convening authority cured the error and its resultant prejudicial effect by approving only the lesser included offense of drunk on duty as a member of the guard. Basic to the traditions of military justice is the concept that every accused has a right to have his guilt or innocence determined by a duly

110

appointed court-martial acting on the basis of competent evidence and guided by appropriate and accurate instructions. This concept applies not only to the principal offense charged, but as well to the lesser included offenses placed in issue. This case was tried on the theory that a capital offense was in issue, and the law officer so instructed the court-martial members prior to their deliberations on the sentence. Because trial proceeded on that basis, the accused had a right to have these depositions excluded from evidence and for our purposes their contents cannot be considered. Therefore, the error present here cannot be cured by the subsequent action unless we can say there is no reasonable possibility that the accused could have been found not guilty of drunk on duty as a member of the guard on the evidence presented at trial, exclusive of the depositions. If, on this record, absent the depositions, the members of the court-martial could have arrived at any finding on the lesser included offense other than guilty, then the present findings cannot stand. We are not concerned with instructional shortcomings in this instance as it is conceded the court-martial was informed adequately and properly. Therefore, we need only concern ourselves with the question of the compelling weight of the competent evidence as to the lesser offense presented at trial.

The Manual for Courts-Martial, United States, paragraph 191, page 347, provides as follows concerning the offense of drunk on duty:

"Article 112 sets forth the offense of being found drunk on duty. The term 'duty' as used in this article means military duty, but it is important to note that every duty which an officer or enlisted person may legally be required by superior authority to execute is necessarily a military duty.

"Whether the drunkenness was caused by liquor or drugs is immaterial; and any intoxication which is sufficient sensibly to impair the rational and full exercise of the mental and physical faculties is drunkenness within the meaning of the article.

"It is necessary that accused be found drunk while actually on the duty alleged, and the fact that he became drunk before going on duty, although material in extenuation, does not affect the question of his guilt. If, however, he does not undertake the responsibility or enter upon the duty at all, his conduct does not fall within the terms of this article, nor does that of a person who absents himself from his duty and is found drunk while so absent. Included within the article is drunkenness while on duty of an anticipatory nature such as that of an aircraft crew ordered to stand by for flight duty, or of an enlisted person ordered to stand by for guard duty."

In testing to determine whether the evidence aliunde the depositions required a finding of guilt on the lesser offense, we find ample evidence to compel a finding on all essential facts except that accused undertook the responsibilities or entered upon the duties of the guard. There is testimony by the Company Commander that at 8:00 pm the accused walked into his quarters and stated he was on guard and would do a good job. However, the Captain testified he knew nothing about the accused being posted although his tour of duty was from 8:00 pm until 10:00 pm. According to the Captain, accused was sober at that time. It is apparent that certain portions of that testimony are denied by the story told by the accused. Moreover, if it is accepted, the accused was not intoxicated until some time after 8:00 pm. Undoubtedly, the Captain's evidence tends to support a finding but in the light of other evidence, it is not compelling.

The period prior to 8:00 pm would be of importance if the evidence established that the accused made his request for a particular assignment at or after the mounting of the guard or that he was present at the ceremony. But the record contains no evidence to indicate the time when the guard was mounted, or whether guard mount was ever held. Furthermore, there is no evidence as to the customary unit practice as to these particulars, and no evidence as to the normal tour of guard

duty. We cannot regard what seems on its face to have been a casual request for a particular assignment which may have been made some time before the tour of duty commenced as an assumption of the duties of a guard. While the court-martial members being familiar with local conditions might have concluded that the accused, by requesting a specific guard assignment, had assumed the responsibilities of a guard, we cannot say that this record demands such a finding. We conclude, therefore, that the evidence is not of such a quality and quantity as to compel a finding of guilty as to the offense of drunk on duty as a member of the guard. Therefore, the convening authority's action was insufficient to purge the error which occurred here.

The decision of the board of review is reversed. The record is returned to The Judge Advocate General of the Army for rehearing or reference to the board of review for action not inconsistent with this opinion.

Judge BROSMAN concurs.

QUINN, Chief Judge (dissenting):

I dissent.

I can find no substantial prejudice to the accused. Therefore, I would affirm the board of review.