UNITED STATES, Appellee

v

JACK EUGENE SWAIN, Aviation Structural Mechanic
First Class, U. S. Navy, Appellant

10 USCMA 37, 27 CMR 111

■■■■■■■

No. 11,388

Decided November 21, 1958

■■■■■■■

*Commander David Bolton* argued the cause for Appellant, Accused. With him on the brief was *Ensign David M. Clinard.*

*Commander Louis L. Milano* argued the cause for Appellee, United States. With him on the brief was *Commander Craig McKee.*

### Opinion of the Court

GEORGE W. LATIMER, Judge:

The accused was arraigned before a general court-martial to stand trial for two offenses in contravention of Article 132, Uniform Code of Military Justice, 10 USC § 932, and one in violation of Article 121, Uniform Code of Military Justice, 10 USC § 921. The allegations of the first charge stated he had presented to a military disbursing officer a claim for traveling expenses of his dependents which he knew to be false and that he had made and used a voucher for that purpose knowing it to contain false statements. He was also charged with the theft of the amount of reimbursement he received from the Government. The charges and their underlying specifications arose out of a single fraudulent transaction alleged to have been perpetrated by the accused at the Naval Air Station, Corpus Christi, Texas, on or about April 16, 1953. However, it was not until December 11, 1956, that the sworn charges and specifications were received by an officer exercising summary court-martial jurisdiction over the command. This lapse of more than three years' time from the date the offenses were committed prompted defense counsel to move for a dismissal of the charges. His motion was predicated on subsection (b), Article 43, Uniform Code of Military Justice, 10 USC § 843, which states that:

"(b) Except as otherwise provided in this article, a person charged with . . . any of the offenses punishable under sections 919–932 of this title (articles 119–132) is not liable to be tried by court-martial if the offense was committed more than three years before the receipt of sworn charges and specifications by an officer exercising summary court-martial jurisdiction over the command."

The Government replied that, since the United States was at war in Korea on April 16, 1953, subsection (f) or Article 43, supra, which is as follows:

"(f) When the United States is at war, the running of any statute of limitations applicable to any offense under this chapter—

(1) involving fraud or attempted fraud against the United States or any agency thereof in any manner, whether by conspiracy or not;

· · · · ·

is suspended until three years after the termination of hostilities as proclaimed by the President or by a joint resolution of Congress,"

operated to suspend the running of the statute of limitations for three years after the hostilities. The law officer sustained the Government's position and ruled against the motion.

Following his trial, accused was convicted as charged and sentenced to a bad-conduct discharge, total forfeitures, and confinement at hard labor for one year, with a reduction in rank to airman recruit. The convening authority lessened the severity of all portions of the sentence. The board of review, affirming only those convictions laid under Article 132, supra, and considering

38

them multiplicious, remitted the punitive discharge and affirmed a sentence of confinement at hard labor and partial forfeitures for six months, and a reduction to airman. This Court granted accused's petition for review to decide whether the law officer erred in denying the motion to dismiss based on the expiration of the period of limitations.

That Article 43 (f) (1) above quoted contemplates the offenses under consideration and that those offenses constitute an attempt at fraud "of a pecuniary nature" upon the Government is not disputed. See United States v Grainger, 346 US 235, 97 L ed 1575, 73 S Ct 1069 (1953), reh den, 346 US 843, 98 L ed 363, 74 S Ct 14. Appellate defense counsel, however, advance other arguments in an effort to bar its application to the present case, all but one of which have been considered by this Court heretofore and laid to rest. For example, we are met *in limine* with the contention that the Korean "police action" did not constitute a war for the purposes of military law. United States v Bancroft, 3 USCMA 3, 11 CMR 3; United States v Gann, 3 USCMA 12, 11 CMR 12; United States v Aldridge, 4 USCMA 107, 15 CMR 107; and United States v Anderten, 4 USCMA 354, 15 CMR 354, fully elaborate this Court's view, from which we do not retreat, that the Korean conflict was a war within the meaning of the Uniform Code of Military Justice. As we reasoned in United States v Shell, 7 USCMA 646, 23 CMR 110, war "can exist in fact, without a declaration, and . . . its existence is to be determined by the realities of the situation as distinguished from legalistic niceties." United States v Bancroft, supra, was written in the midst of the hostilities in Korea and in that opinion we rationalized that:

". . . a finding that this is a time of war, within the meaning of the language of the Code, is compelled by the very nature of the present conflict; the manner in which it is carried on; the movement to, and the presence of large numbers of American men and women on, the battlefields of Korea; the casualties involved; the sacrifices required; the drafting of recruits to maintain the large number of persons in the military service; the national emergency legislation enacted and being enacted; the executive orders promulgated; and the tremendous sums being expended for the express purpose of keeping our Army, Navy and Air Force in the Korean theatre of operations. For our purpose, it matters not whether the authorization for the military activities in Korea springs from Congressional declarations, United Nations Agreements or orders by the Chief Executive. Within the limited area in which the principles of military justice are operative, we need consider only whether the conditions facing this country are such as to permit us to conclude that we are in a state of war within the meaning of the terms as used by Congress."

For their next contention, appellate defense counsel are willing to assume that we will not reverse our previous holdings and that a state of war existed in Korea at the time accused breached Article 132. Yet they seek to exempt him from a suspension of the peacetime statute of limitations for the reason that his offenses were committed within the continental limits of the United States, where no fighting was taking place. This Court rejected that sort of argument in United States v Taylor, 4 USCMA 232, 15 CMR 232, saying, for many reasons there expounded, that: "[W]e reject all distinction between offenses occurring in Korea and those taking place in the zone of the interior." See also United States v Ayers, 4 USCMA 220, 15 CMR 220; United States v Shell, supra; United States v Busbin, 7 USCMA 661, 23 CMR 125. The *Ayers* case, supra, also disposes of appellant's next objection to the influence of Article 43 (f) upon the case at bar, viz., that it involves a violation of the Constitutional prohibition against *ex post facto* legislation.

Appellant's final and most meritori-

ous point is that, regardless of our holdings in the previously ▮▮▮▮▮▮▮ ▮ cited cases, prosecution of this accused for the crime alleged is barred because action was not commenced prior to the expiration of three years after the Korean conflict ended. That brings into consideration certain holdings of the United States Supreme Court.

Because Article 43(f) was taken directly from 18 USC § 3287, "The Wartime Suspension of Limitations Act," we announced in United States v Taylor, supra, that we were disposed to construe the Code in the same manner that the United States Supreme Court interpreted the Federal statute governing civilian cases. However, appellate defense counsel call our attention to what they contend is an apparent divergence of opinion in two decisions emanating from that Court which interpret the latter statute. Both cases were concerned with the following language, which is identical with that of our subsection: "the running . . . [of the statute of limitations] is suspended until three years after the termination of hostilities." To the Second Circuit Court of Appeals in United States v Klinger, 199 F2d 645 (1952), this meant that the war provision was not a suspension of the statute barring trial until three years after the war ended, at which time the limitation period would start running, but rather it was a suspension which was automatically withdrawn upon the termination of hostilities. In other words, that court concluded that the "'three-year period' which 'starts to run at the date of termination of hostilities' is the period prescribed for limitation" of prosecution and not a preliminary term of three years which must elapse before the period of limitation begins. The Supreme Court affirmed this holding per curiam "by an equally divided Court," on June 15, 1953. United States v Klinger, 345 US 979, 97 L ed 1393, 73 S Ct 1129. However, on the same day, a clear majority of that Court in United States v Grainger, supra, construing the same language of the Suspension Act, handed down an opinion— which on the surface appears contrary

—that the statute barring trial was suspended until three years after the termination of a war, at which time the period which was necessary to erect the bar began to run for the first time.

Appellate defense counsel contend that we should apply the *Klinger* rather than the *Grainger* doctrine to decide this case, while the Government asserts to the contrary. The facts we have recited in the early part of this opinion show that this accused was tried for a wartime offense of fraud against the United States allegedly committed on April 16, 1953. The war ended on July 27, 1953. United States v Shell, supra. More than three years intervened before the Government took an appropriate step to prosecute this case. Therefore, the question of which of the two holdings of the Supreme Court should control this case is of critical importance. Our analysis leads us to conclude that *the law is as announced in United States v Grainger, supra, and that accused's prosecution is not barred.* The *Klinger* decision only purported to be a natural and logical extension of the case of United States v Smith, 342 US 225, 96 L ed 252, 72 S Ct 260 (1952), in which the Court held, five to four, that the Suspension Act did not apply to crimes committed after a war was ended. From that hypothesis the Court of Appeals for the Second Circuit reasoned that the Suspension Act was a bar for the running of a statute which was lifted when the conflict terminated. Perhaps the nub of that opinion is found in the following conclusion:

". . . we cannot see why, once it is settled that 'running' means 'bar' as to crimes committed after the 'termination of hostilities,' it does not mean the same thing as to crimes committed before, . . . " [199 F2d 645 at page 648.]

We need not question the logic of that reasoning, but we do mention that Judge Learned Hand, the author of the opinion, conceded the question was not free from doubt and that the court was required to cast aside a literal reading of the statute to reach the end determination. The Supreme Court in *Grainger* refused to accept that ration-

40

ale as it concluded Congress meant what it said clearly in the statute. And if we were required to reconcile the asserted difference in the two cases, we could find justification for so doing in the words of that Court's later pronouncement. It distinguished its *Klinger* holding by stating there was "an issue as to whether the offense charged was one involving fraud of a pecuniary nature upon the United States." Therefore, to rely upon the reasoning of United States v Klinger, supra, would be to reject a positive interpretation of a United States statute by the Supreme Court. That we choose not to do. Accordingly, we conclude the period of limitation set out in Article 43(b), supra, did not commence to run until three years after the termination of hostilities in Korea on July 27, 1953. United States v Shell, supra. When that day is used as the beginning of the period of limitations, it is apparent that this action was commenced in time.

The decision of the board of review is affirmed.

Judge FERGUSON concurs.

QUINN, Chief Judge (dissenting):

In my opinion, the Korean conflict did not establish a state of war in the continental United States. See my dissent in United States v Ayers, 4 USCMA 220, 228, 15 CMR 220. Consequently, the suspension provision of Article 43, Uniform Code of Military Justice, 10 USC § 843, is inapplicable and the prosecution is barred by the regular period of limitations. I would set aside the conviction. However, I would order a rehearing in order to give the Government opportunity to show, if it can, that the statute has been tolled for a part of the time. See Article 43(d), Uniform Code of Military Justice, and my dissent in United States v Taylor, 4 USCMA 232, 240, 15 CMR 232.