# UNITED STATES ARMY COURT OF CRIMINAL APPEALS

Before
FLEMING, PENLAND, and COOPER
Appellate Military Judges

**UNITED STATES, Appellee**
v.
**Staff Sergeant ZACKERY J. ASKINS**
**United States Army, Appellant**

ARMY 20230303

Headquarters, U.S. Army Fires Center of Excellence and Fort Still
Tiffany D. Pond, Military Judge
Colonel John M. McCabe, Staff Judge Advocate

For Appellant: Major Robert W. Duffie, JA (argued); Colonel Phillip M. Staten, JA; Lieutenant Colonel Autumn R. Porter, JA; Major Tumentugs D. Armstrong, JA (on brief); Colonel Phillip M. Staten, JA, Lieutenant Colonel Autumn R. Porter, JA; Major Robert W. Rodriguez, JA; Captain Robert W. Duffie, JA (on reply brief); Colonel Philip M. Staten, JA; Jonathan F. Potter, Esquire; Major Robert W. Rodriguez, JA; Captain Eli M. Creighton, JA (on supplemental brief).

For Appellee: Captain Vy T. Nguyen, JA (argued); Colonel Richard E. Gorini, JA; Major Lisa Limb, JA; Captain Vy T. Nguyen, JA (on brief); Major Vy T. Nguyen, JA; Ms. Lauren Thompson (on supplemental brief).

28 August 2025

-----------------------------------
MEMORANDUM OPINION
-----------------------------------

*This opinion is issued as an unpublished opinion and, as such, does not serve as precedent.*

FLEMING, Senior Judge:

While stationed in Alaska, appellant stole Army explosive materials (i.e., multiple blocks of charge demolition (C-4)).[1] When appellant received reassignment

---

[1] We note multiple scrivener's errors in the Statement of Trial Results that warrant

(continued . . .)

orders to Oklahoma, he arranged to transport the C-4 blocks and blasting caps from Alaska through the Port of Seattle, Washington to Oklahoma. Now on appeal, appellant argues his plea of guilty to stealing the C-4 blocks was improvident due to a statute of limitations prohibition and his offense of transporting the C-4 blocks and blasting caps was improperly charged by the government. We disagree with both his assertions.[2]

## BACKGROUND

A military judge, sitting as a general court-martial, convicted appellant, pursuant to his pleas, of one specification of forgery, two specifications of false official statement, two specifications of sale of military property, four specifications of larceny of military property, one of which being explosives, and one specification of a federally assimilated crime for the improper transportation of explosives, in violation of Articles 105, 107, 108, 121, and 134 Uniform Code of Military Justice, 10 U.S.C. §§ 905, 907, 908, 921, and 934 [UCMJ]. For these offenses, appellant was sentenced to confinement for ninety-six months and a fine of $35,000. The same military judge also convicted appellant, contrary to his pleas, of three specifications of domestic violence, in violation of Article 128b, UCMJ. For these

---

( . . . continued)
correction. Specification 2 of Charge I erroneously states appellant did "between on or about 1 December 2018 and on or about 31 December 2019, wrongfully appropriate multiple night vision devices, image intensifiers, sights, heads-up display units, and other optics, of a value of more than $1,000, military property, the property of the United States." We correct that language to read appellant did "between on or about 15 January 2019 and on or about 11 December 2019, steal multiple night vision devices, thermal weapon sights, and other optics, military property, of a value of more than $1,000, property of the United States."

Specification 3 of Charge I is corrected to substitute the phrase "the property of the United States" with "military property of the Untied States."

Specification 4 of Charge I is corrected to read "of a value of more than $1,000, military property of the United States."

[2] Appellant raised three assignments of error – two of which we will discuss but provide no relief. We have also given full and fair consideration to the matters personally raised by appellant pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982), and determine they merit neither discussion nor relief. We have, however, as discussed later, determined Specifications 1 and 2 of Charge V encompass the same unit of prosecution and, consistent with this court's opinion in *United States v. Malone*, 85 M.J. 573 (Army Ct. Crim. App. 2025), will provide relief in our decretal paragraph.

offenses, appellant was sentenced to an additional six months of confinement. The military judge also adjudged a dishonorable discharge, total forfeitures of all pay and allowances, and reduction to the grade of E-1.

Appellant stole the C-4 blocks while serving as a senior explosive ordinance disposal (EOD) technician at Joint Base Elmendorf-Richardson (JBER), Alaska. As a senior technician, appellant was responsible for leading teams on missions to safeguard, collect, and dispose of explosive materials. During these missions, appellant often had "unfettered access to the sometimes hundreds of available explosives [meant to be utilized] on that mission." The government ultimately charged appellant with stealing multiple blocks of C-4 "between on or about 25 August 2014 and 14 August 2017." However, during his guilty plea colloquy with the military judge, appellant stated he could provide only "a very rough approximation" as to when he stole the C-4 blocks and "it would have been between February of 2016 and December of 2016."

Around February 2018, appellant moved from JBER to Fort Sill, Oklahoma. As part of his permanent change in station, appellant arranged for the transportation of the stolen C-4 blocks from Alaska to his new home, passing through the Port of Seattle. Based on this, the government charged appellant with an assimilated federal offense for violating 18 U.S.C. § 842, for knowingly transporting, or causing to be transported, explosive materials (C-4 and blasting caps) without a license or permit.

Charges were subsequently preferred against appellant for these and other offenses. The charges were received by appellant's battalion commander, the summary court-martial convening authority, on 7 March 2022, approximately five years and three months from the latest date (December 2016) appellant told the military judge the C-4 blocks could have been stolen.

Following referral, defense filed a motion to dismiss the larceny offense regarding the C-4 blocks based on an alleged failure by the government to state an offense. In his written motion, appellant acknowledged the typical five-year statute of limitations period did not apply to his larceny of the C-4 blocks, citing Article 43, UCMJ, and *United States v. Rivaschivas*, 74 M.J. 758 (Army Court Crim. App. 2015). As such, appellant contended he could be prosecuted for misconduct dating back to 2011, at Fort Carson, Colorado, his duty station prior to JBER.[3] Because of

---

[3] In his motion, appellant asserted he had, "continuing exposure for criminal liability for *any* future allegations of larceny committed as early as 2011 . . . . *See*, UCMJ, art. 43 (placing a toll on statutes of limitation during a time of war); *United States v. Rivaschivas*, 74 M.J. 758 (Army Ct. Crim. App. 2015) (finding the Iraq and Afghanistan conflicts constitute a 'time of war' under Article 43 of the UCMJ)."

(continued . . .)

this, appellant's defense counsel asserted the charge was deficient as the date range charged was overly broad and did not provide sufficient notice of the misconduct for which appellant was accused or protect him against Double Jeopardy. The military judge denied the defense motion finding:

> The date range of on or about 25 August 2014 to 14 August 2017 is broad but not so broad that it fails to provide constitutional protections . . . . Tellingly, the Government did not charge the entire five-year period during which the Accused was stationed at JBER from 17 March 2014 to 12 March 2019. Rather, the Government narrowed the scope to track with the dates reflected by the evidence.

Ultimately, appellant agreed to plead guilty to the larceny and transporting the C-4 blocks. During the providence inquiry, the military judge discussed a "waive all waivable motions" clause with appellant that was included in his plea agreement, however, the military judge did not specifically discuss a statute of limitations defense.

## LAW AND DISCUSSION

### A. Statute of Limitations

Article 43(b)(1), UCMJ, provides:

> Except as otherwise provided in this section (article), a person charged with an offense is not liable to be tried by court-martial if the offense was committed more than five years before the receipt of sworn charges and specifications by an officer exercising summary court-martial jurisdiction over the command.

This five-year limitation period applies to most offenses unless an exception is clearly applicable. *See* Article 43(b)(2). However, under certain, enumerated

---

( . . . continued)
(emphasis added) (citations cleaned up). The genesis of the defense motion centered on the government's inability to identify a particular C-4 block from another C-4 block. Although C-4 blocks have a lot number, they do not receive an individualized identifier. The C-4 blocks appellant stole came from the same lot (i.e., they all had the exact same lot number). According to Army records, the C-4 blocks appellant stole belonged to a lot which was divided and sent to either Alaska or Fort Carson, Colorado. Appellant claimed his conviction for the JBER thefts would not protect him from subsequent prosecution of any thefts that may have occurred in Colorado while he had been stationed there.

exceptions, the statute of limitations may be tolled. Pursuant to Article 43(f), UCMJ:

> When the United States is at war, the running of any statute of limitations applicable to any offense under this chapter . . . committed in connection with the acquisition, care, handling, custody, control, or disposition of any real or personal property of the United States . . . is suspended until three years after the termination of hostilities as proclaimed by the President or by a joint resolution of Congress.

This provision reflects Congress's intent to preserve the government's ability to prosecute offenses committed during wartime that directly implicate the security or readiness of the armed forces. *See United States v. Swain*, 10 U.S.C.M.A. 37, 40-41, 27 C.M.R. 111, 115 (1958) (regarding the tolling of the statute of limitations, "Congress meant what it said clearly in the statute."). There is no dispute that C-4 is an "explosive" and the "real or personal property of the United States." Rule for Courts-Martial [R.C.M.] 103(11) (2019 ed.) (defining explosive); *Manual for Courts-Martial*, pt. IV, ¶ 64.c.(1)(h) ("Military property is all property, real or personal, owned, held, or used by one of the armed forces of the United States.").

The critical question thus becomes whether the United States was in a "time of war" during the relevant period (2014 to 2017). Courts conduct a multi-factored analysis to determine "whether the country is engaged in a *de facto* war . . . ." absent a formal declaration of war. *Rivaschivas*, 74 M.J. at 761.[4] In conducting this analysis, courts consider:

> (1) the nature of the conflict; (2) the manner in which it is carried on; (3) the movement to and presence of large numbers of personnel on the battlefield; (4) the casualties involved; (5) the sacrifices required; (6) the drafting of recruits to maintain a large number of personnel in the military service; (7) national emergency legislation enacted and being enacted; (8) executive orders promulgated; and (9) the expenditure of large sums to maintain armed forces in the theater of operations.

*Id.* (internal citation omitted).

At all relevant times, the United States remained engaged in multiple armed conflicts, including combat and counterterrorism operations in Afghanistan, Iraq, and Syria, under the 2001 and 2002 Authorizations for Use of Military Force

---

[4] This standard is also recognized in R.C.M. 103(21): "'time of war' means a period of war declared by Congress, or the factual determination by the President that the existence of hostilities warrants a finding that a 'time of war' exists . . . .".

(AUMF).[5] The President and Congress repeatedly acknowledged these hostilities through military appropriations, force deployments, executive orders, and casualty reporting. Furthermore, it was not until 14 April 2021 that the President declared the ending of hostilities in Afghanistan[6] and 31 August 2021 that the President declared the end of the war in Afghanistan.[7] Thus, considering the factors in *Rivaschivas* and recognizing the plain language of Article 43(f), UCMJ,[8] the court concludes the United States was in a "time of war" within the meaning of Article 43(f) during the period in question.

Accordingly, the statute of limitations applicable to appellant's offenses involving the larceny of C-4 was tolled until three years after the termination of hostilities. Therefore, prosecution of the appellant's misconduct occurring as early as August 2014 was not time-barred.

### B. 18 U.S.C. § 842 Offense

For the first time on appeal, appellant alleges he was prosecuted under the incorrect assimilated statute as his actions fell under an exception to the crime.

18 U.S.C. § 842 makes it unlawful for a person, other than "a licensee or permittee" to knowingly "transport, ship, cause to be transported, or receive any explosive materials." § 842(a)(3), (A). The prohibition does not apply, however, to "aspects of the transportation of explosive materials via railroad, water, highway, or air that pertain to safety . . . and are regulated by the Department of Transportation .

---

[5] Pub. L. 107-40, 115 Stat. 224 (2001); Pub. L. 107-243, 116 Stat. 1498 (2002).

[6] President Joseph R. Biden, Jr., *Remarks by President Biden on the Way Forward in Afghanistan*, THE WHITE HOUSE (April 14, 2021, 2:29 PM), https://bidenwhitehouse.archives.gov/briefing-room/speeches-remarks/2021/04/14/remarks-by-president-biden-on-the-way-forward-in-afghanistan/.

[7] President Joseph R. Biden Jr., *Remarks by President Biden on the End of the War in Afghanistan*, THE WHITE HOUSE (31 August 2021, 3:28 PM), https://bidenwhitehouse.archives.gov/briefing-room/speeches-remarks/2021/08/31/remarks-by-president-biden-on-the-end-of-the-war-in-afghanistan/.

[8] Article 43(f), UCMJ, makes clear "the termination of hostilities as proclaimed by the President" is the relevant point where the statute of limitations ceases tolling after being suspended during a time of war. Here, President Biden's declaration that hostilities had ended further supports the conclusion that a time of war existed prior to his announcement.

. . ." 18 U.S.C. § 845(a)(1). These regulations include the "labeling, packaging, mode of transportation, placarding and shipping papers," i.e., "the physical requirements or manner in which hazardous materials must be transported by one who has a license." *United States v. Petrykievicz*, 809 F.Supp. 794, 797 (W.D. Wash. 1992).[9] In other words, *how* explosives must be shipped, rather than *who* (a licensee) may ship them. *Id.*; *see also American Cylinder Mfrs. Committee v. Department of Transportation*, 578 F.2d 24, 27, n.2 (2d Cir. 1978).

Appellant shipped C-4 blocks and blasting caps during his permanent change of station, utilizing some combination of public roads, railways, and shipping lanes. While these modes of transportation generally fall under the regulatory purview of the Department of Transportation (DOT), appellant circumvented inspection processes and failed to obtain the required licenses for transporting explosive materials. *See Petrykievciz*, 809 F. Supp. at 796. As "[t]he aspect regulated by the Department of Transportation is *how* items may be transported once the transporter obtains a license . . . ., the 18 U.S.C. § 845 exclusion does not apply . . . ." *Id.* at 797 (emphasis in original).[10]

Furthermore, the exception contained in Section 845(a)(1) is intended to preclude the application of criminal provisions to lawful and regulated transportation activities, not to protect individuals who exploit weaknesses in the regulatory system to engage in unlawful conduct. 18 U.S.C. § 845. Appellant's acts, which included knowingly transporting explosives without proper permitting or licensure, falls outside the scope of lawful transportation activities contemplated by the exception. *See United States v. Scharstein*, 531 F. Supp. 460, 466 (E.D. Ky. 1982). Appellant's conduct constitutes a violation of 18 U.S.C. § 842 and the statutory exception cannot be invoked to shield such unlawful behavior. It was not an abuse of discretion for the military judge to accept his plea.

---

[9] While federal cases are not binding precedent for our court, and we review the interpretation of statutes de novo, we find them to be highly persuasive. *United States v. Vargas*, 74 M.J. 1, 5 (C.A.A.F. 2014). Assimilated federal statutes are regularly charged under Article 134, UCMJ, and military courts routinely look to federal precedent for guidance in interpreting such statutes. *See, e.g., United States v. Pierce*, 70 M.J. 289 (C.A.A.F. 2018).

[10] We further note our superior court has, on at least one prior occasion, encountered 18 U.S.C. § 842. *See United States v. Disney*, 62 M.J. 46 (C.A.A.F. 2005). The court affirmed the constitutionality of Section 842, finding appellant's act of possessing stolen explosive materials (a criminal act under the statute), knowing that the materials had previously been shipped through interstate commerce, was sufficient to pass constitutional muster. *Id.* at 46, 49-51.

### C. Specifications 1 and 2 of Charge V

"The Court may affirm only such findings of guilty, and the sentence of such part or amount of the sentence, as the Court finds correct in law and fact." UCMJ, art. 66(d)(1). Absent evidence of affirmative error, the failure to raise a claim of multiplicity at trial results in forfeiture, which we review for plain error.[11] *United States v. Davis*, 79 M.J. 329, 331 (C.A.A.F. 2020); *United States v. Heryford*, 52 M.J. 265, 266 (C.A.A.F. 2000). Under plain error review, the appellant must establish: "(1) there was error, (2) the error was plain or obvious, and (3) the error materially prejudiced a substantial right of the accused." *United States v. Malone*, 85 M.J. 573, 581 (Army Ct. Crim. App. 2025) (quoting *United States v. Jones*, 78 M.J. 37, 44-45 (C.A.A.F. 2018)). We review whether an issue is forfeited or waived de novo. *Davis*, 79 M.J. at 331.

In the present case, there is no evidence of affirmative waiver as appellant contested his guilt at trial. As there is no waiver, we will review for plain error.

Multiplicity, as a constitutional doctrine under the Double Jeopardy Clause, "prohibits multiple punishments for the same offense," *United States v. Forrester*, 76 M.J. 479, 484-85 (C.A.A.F. 2017) (quoting U.S. Const. amend. V) (alteration omitted). *United States v. Coleman*, 79 M.J. 100, 102 (C.A.A.F. 2019). Whether an appellant has been charged with multiple violations of the same statute, predicated on the same criminal conduct, often hinges on the allowable unit of prosecution, determined based on the *actus reus* of the defendant. *Forrester*, 76 M.J. at 485. This principle is reflected in our opinion in *Malone*, where we found multiple specifications of domestic violence, arising from a single, continuous transaction, were multiplicious. 85 M.J. at 583-85; *see also Heryford*, 52 M.J. at 266.

To assess whether appellant's convictions are multiplicious, we must determine whether the specifications are based on separate and distinct acts. *Malone*, 85 M.J. at 583. Under this analysis, individual assaults "united in time, circumstance, and impulse" should not be parsed into separate charges. *United States v. Rushing*, 11 M.J. 95, 98 (C.M.A. 1981).

Additional facts are necessary to analyze the multiplicity issue in appellant's case. In September 2021, appellant's wife told appellant she wanted a separation, and a heated argument ensued. Appellant slammed her into a dog kennel and began to strangle her. Once appellant let go, she grabbed her belongings and stated she

---

[11] Forfeiture occurs when a party fails to timely assert a right, distinguishing it from waiver, which is the intentional relinquishment of a known right. *United States v. Gladue*, 67 M.J. 311. 313 (C.A.A.F. 2009). This distinction is critical because while waived issues are not subject to appellate review, forfeited issues may still be reviewed under the plain error standard. *Id.*

was going to appellant's unit to report the assault. In response, and as she headed to the door with her keys, appellant wrapped his hands around her neck again and slammed her head into a breaker box. Appellant then placed her in a bear hug until she could not breathe. She went limp and dropped onto the floor. Ultimately, she gained the ability to leave the home and reported appellant's assaults to his unit.

Appellant was charged with strangling his wife around her neck with his hands in Specification 1 of Charge V. He was also charged with slamming her body into a dog kennel and banging her head against a breaker box in Specification 2 of Charge V. Appellant slammed his wife into a dog kennel and began to strangle her. Appellant let go and as his wife was attempting to leave, he wrapped his hands around her neck and slammed her head into a breaker box. As these charges were united in both time and location, and sprung from the same impulse, they will be merged to reflect the single, ongoing nature of the attack. *See Malone*, 85 M.J. at 573.

Even if we were to find a break in time and impulse between the dog kennel and breaker assaults sufficient to create two "successive impulses . . . separately given," the specifications remain multiplicious as appellant strangled the victim in both instances. *Blockburger v. United States*, 284 U.S. 299, 302 (1932). While a single conviction for potentially multiple criminal acts does not violate our general verdict jurisprudence, it creates an issue here as either strangulation that the military judge could have found appellant guilty of was multiplicious with another action— either slamming the victim into the dog kennel or into the breaker box—as they occurred contemporaneously with the other and arouse from the same impulse. *See United States v. Rodriguez*, 66 M.J. 201, 204-05 (C.A.A.F. 2008).

Given the remedy of dismissing the multiplicious specifications, we must determine whether our "broad discretion" allows us to reassess appellant's sentence instead of ordering a rehearing. *United States v. Winckelmann*, 73 M.J. 11, 12 (C.A.A.F. 2013). Based on our experience as judges on this court, and with the aid of a confinement sentence segmented by the military judge in which appellant was sentenced for the same amount of time for all three domestic violence specifications, to be served concurrently, we are confident merging two specifications into one would not impact his sentence.

## CONCLUSION

Upon consideration of the entire record, Specifications 1 and 2 of Charge V are merged into a consolidated specification, numbered as Specification 1 of Charge V, to read as follows:

In that [appellant], U.S. Army did, at or near Medicine Park, Oklahoma, on or about 15 September 2021, assault his spouse . . . , by strangling

her around her neck with his hands, and did commit a violent offense against his spouse . . . to wit: slamming her body into a dog kennel and banging her head against a breaker box.

The finding of guilty to Specification 1 of Charge V, as consolidated, and Charge V is AFFIRMED. The finding of guilty to Specification 2 of Charge V is SET ASIDE and that specification is DISMISSED. The remaining findings of guilty are AFFIRMED. Reassessing the sentence, the segmented sentence to confinement for Specification 1 of Charge V is AFFIRMED, and the total sentence to a dishonorable discharge, 102 months of confinement, a fine of $35,000.00 and reduction to the grade of E-1 is AFFIRMED.

Judge COOPER concurs.

Senior Judge PENLAND, concurring in the result in part and dissenting in part.

I concur with the majority's ultimate decision to deny relief in response to appellant's assigned errors about Article 43, Uniform Code of Military Justice, 10 U.S.C. § 843 [UCMJ], and 18 U.S.C. § 845(a)(1). But rather than substantively addressing those matters, we should find waiver by operation of appellant's guilty pleas to the associated specifications. *United States v. Broce*, 488 U.S. 563, 573-74 (1989) ("Relinquishment derives not from any inquiry into a defendant's subjective understanding of the range of potential defenses, but from the admissions necessarily made upon entry of a voluntary plea of guilty."). Separately, appellant also affirmatively waived the assigned errors by waiving motions in his plea agreement.

I respectfully dissent from my friends' treatment of Specifications 1 and 2 of Charge V, and would affirm both convictions. For the reasons I discussed in *United States v. Malone*, 85 M.J. 573, 591-92 (Army Ct. Crim. App. 2025) (Penland, J., dissenting), we should recognize the affirmative waiver conveyed by defense counsel's statements on 3 August 2022: "Your Honor, all motions have already been made. The defense has no further motions." and on 23 May 2023, "Your Honor, the defense has no additional pretrial motions."[12] [13]

---

[12] A multiplicity complaint was not among the defense motions.

[13] In my view these declarations also affirmatively extinguished appellant's assigned complaints about Article 43, UCMJ, and 18 U.S.C. § 845(a)(1).

FOR THE COURT:

JAMES W. HERRING, JR.
Clerk of Court