# UNITED STATES *v.* GRAINGER.

NO. 634.

Argued May 4–5, 1953.—Decided June 15, 1953.

*John F. Davis* argued the cause for the United States. With him on the brief were *Robert L. Stern,* then Acting Solicitor General, *Beatrice Rosenberg* and *John R. Wilkins. Walter J. Cummings, Jr.,* then Solicitor General, was on the Statement as to Jurisdiction.

*Jack J. Miller* argued the cause and filed a brief for appellee in No. 634.

*John V. Lewis* argued the cause for appellees in Nos. 635 and 636. With him on the brief was *Clyde C. Sherwood.*

MR. JUSTICE BURTON delivered the opinion of the Court.

These cases were argued immediately following No. 548, *Bridges* v. *United States, ante,* p. 209. They concern the

Wartime Suspension of Limitations Act which we found inapplicable to the offenses stated in the Bridges indictment. These cases, however, involve different offenses and we hold the Suspension Act applicable to the instant indictments for offenses committed in 1945 and 1946 and we hold that the United States may thus prosecute them in 1952.[1]

The principal questions here are: (1) whether the Wartime Suspension of Limitations Act[2] suspended the running of the general three-year statute of limitations[3] as to violations of the false claims clause of the False Claims Act,[4] and (2) if so, whether the indictments for such offenses, found in 1952, were timely. For the reasons hereafter stated, our answer to each question is in the affirmative.

These indictments were filed in 1952 in the United States District Court for the Northern District of California. The indictment in No. 634 charges appellee Grainger, in 16 counts, with having "unlawfully, know-

----

[1] This conclusion does not apply to any overt act alleged in No. 636 to have been committed in 1947. Any such act was committed after the President's proclamation of the termination of hostilities December 31, 1946, 3 CFR, 1946 Supp., 77–78, and, therefore, after the period to which the Suspension Act applied. *United States* v. *Smith*, 342 U. S. 225.

The indictment in No. 636 is not explicit enough as to the overt acts set forth in paragraphs numbered 2, 3 and 4, under Count Two, to show that the issuance or endorsement of certain checks there described constituted an attempt to defraud the United States. The Suspension Act, accordingly, does not appear to be applicable to them. These items have not been separately discussed by the parties, and are mentioned here to avoid the application of our general conclusions to them in the absence of further consideration.

[2] 18 U. S. C. (Supp. V) § 3287.

[3] 18 U. S. C. (Supp. V) § 3282.

[4] § 35 (A) of the Criminal Code, 52 Stat. 197, 18 U. S. C. § 80, now 18 U. S. C. (Supp. V) § 287.

ingly, wilfully and fraudulently" presented for payment to the Commodity Credit Corporation, at various times in 1945, claims upon that corporation certifying that appellee had made certain purchases of wool at certain prices, knowing such claims "to be false, fictitious and fraudulent . . . ." It charges, further, that appellee knowingly and falsely certified to the Commodity Credit Corporation that he had paid higher prices for the wool than he actually did.[5]

The indictment in No. 635 charges appellees Clavere and Kennedy, in 15 counts, with like offenses committed in 1946, including several claims based upon their false certifications of purchases of wool when they knew that they had made no such purchases.

The indictment in No. 636 charges appellees Clavere and Kennedy, in one count, with conspiring to make false, fictitious and fraudulent claims upon the Commodity Credit Corporation[6] by making somewhat comparable claims in 1946 and 1947. A second count charges appellees Clavere, Kennedy and Shapiro with engaging in a like conspiracy, with overt acts committed in 1946.[7]

Appellees moved to dismiss the indictments on the ground, among others, that each was barred by the applicable statute of limitations. The District Court granted the motions and dismissed the indictments. That

---

[5] Commodity Credit Corporation was a Delaware corporation in which the United States was a stockholder. In 1945 and 1946 it served as an agency of the United States in making loans or purchases in connection with the expansion of the production of many commodities. 15 U. S. C. §§ 713–713a–9; 1 CFR, 1938, 659–678. See also, Commodity Credit Corporation Charter Act of June 29, 1948, 62 Stat. 1070, as amended, 15 U. S. C. (Supp. V) §§ 714–714o.

[6] § 37 of the Criminal Code, 35 Stat. 1096, 18 U. S. C. § 88, now 18 U. S. C. (Supp. V) § 371. See also, 52 Stat. 197, 18 U. S. C. § 83, now 18 U. S. C. (Supp. V) § 286.

[7] See note 1, supra.

court's unreported opinion concludes with the following statement:

> "Accordingly, the Court holds that, as to all three indictments, the three-year statute of limitations fixed by 18 USC section 582 and its successor, 18 USC [Supp. V] section [3282], applies. Because the statute that the various defendants are charged with having violated or with having conspired to violate does not 'denominate' the acts proscribed therein as 'frauds,' or does not, *in so many words,* have as an 'ingredient' a 'defrauding or an attempt to defraud the United States,' neither the Wartime Suspension of Limitations Act of 1942 nor its successor of 1948 can apply."

The United States appealed directly to this Court, under 18 U. S. C. (Supp. V) § 3731.[8]

---

[8] "An appeal may be taken by and on behalf of the United States from the district courts direct to. the Supreme Court of the United States in all criminal cases in the following instances:

"From a decision or judgment setting aside, or dismissing any indictment or information, or any count thereof, where such decision or judgment is based upon the invalidity or construction of the statute upon which the indictment or information is founded.

.          .          .          .          .

"From the decision or judgment sustaining a motion in bar, when the defendant has not been put in jeopardy. . . ." 18 U. S. C. (Supp. V) § 3731.

In its notices of appeal, the United States said merely that it appealed from the several orders dismissing the respective indictments. In its combined statement of jurisdiction it relied upon its right to appeal from a judgment sustaining a motion in bar where the defendant has not been put in jeopardy. The Government, however, now suggests that its appeals are based upon the District Court's construction of the statutes upon which the indictments are founded and it seeks to restrict us to the consideration of the District Court's view of the relation between those statutes and the Suspension Act, without reference to the claim of appellees that the extension of time provided by the Suspension Act expired before the indictments were

240

1. *The running of the general three-year statute of limitations* [9] *was suspended by the Wartime Suspension of Limitations Act* [10] *as to violations, in 1945 and 1946, of the false claims clause of the False Claims Act.* [11]

A. While the offenses charged here are not spelled out in detail, they are sufficiently clear at least to show

found. We treat the appeals as presenting both issues. See *United States* v. *Borden Co.,* 308 U. S. 188; *United States* v. *Curtiss-Wright Corp.,* 299 U. S. 304. See also, *United States* v. *Hark,* 320 U. S. 531, 536; *United States* v. *Goldman,* 277 U. S. 229, 236–237; *United States* v. *Barber,* 219 U. S. 72, 78; and *United States* v. *Kissel,* 218 U. S. 601, 606.

[9] "Except as otherwise expressly provided by law, no person shall be prosecuted, tried, or punished for any offense, not capital, unless the indictment is found or the information is instituted within three years next after such offense shall have been committed." 18 U. S. C. (Supp. V) § 3282.

[10] "When the United States is at war the running of any statute of limitations applicable to any offense (1) involving fraud or attempted fraud against the United States or any agency thereof in any manner, whether by conspiracy or not, or (2) committed in connection with the acquisition, care, handling, custody, control or disposition of any real or personal property of the United .States, or (3) committed in connection with the negotiation, procurement, award, performance, payment for, interim financing, cancelation, or other termination or settlement, of any contract, subcontract, or purchase order which is connected with or related to the prosecution of the war, or with any disposition of termination inventory by any war contractor or Government agency, shall be suspended until three years after the termination of hostilities as proclaimed by the President or by a concurrent resolution of Congress." 18 U. S. C. (Supp. V) § 3287.

The above Act originated in 1942 and was amplified in 1944. In 1945 and 1946, it contained substantially the terms shown above which went into effect September 1, 1948. 56 Stat. 747–748, 58 Stat. 667, 781, 18 U. S. C. § 590a.

[11] 52 Stat. 197, 18 U. S. C. §§ 80, 83, 84, 85. In the codification of 1948, § 80 was subdivided by placing its false claims clause in § 287, and its false statement clause in § 1001, of 18 U. S. C. (Supp. V). The special conspiracy clause, found in § 83, became § 286 in Supp. V.

attempts to obtain payments from the Commodity Credit Corporation in amounts based upon knowingly false certifications to that corporation by the accused that certain purchases of wool had been made by him when he knew that no such purchases had been made by him or, at least, that no such purchases had been made by him at prices as high as those he certified that he paid. The offenses charged are, therefore, of a pecuniary nature and we are not required in these cases to pass upon the contention, discussed in the *Bridges* case, that, in order for the Suspension Act to apply to them, the offenses not only must involve defrauding the United States or an agency thereof, but they also must be of a pecuniary nature or of a nature concerning property.

B. The offenses with which we concern ourselves here are alleged to have occurred in 1945 or 1946. They, therefore, precede the President's proclamation of December 31, 1946, which declared that the hostilities of World War II terminated on that day.[12] The offenses thus come within the period to which the Suspension Act applies. *United States* v. *Smith,* 342 U. S. 225.

C. Fraud upon the United States is an essential ingredient of the offenses charged. The offenses charged in Cases No. 634 and No. 635 are violations of the *false claims clause,* as distinguished from the *false statement clause,* of the False Claims Act. Such false claims clause provides that—

> "Whoever shall . . . present . . . for payment or approval, to . . . any corporation in which the United States of America is a stockholder, any claim upon or against the Government of the United States . . . or any corporation in which the United States of America is a stockholder, knowing such claim to be false, fictitious, or fraudulent . . . shall

---

[12] 3 CFR, 1946 Supp., 77–78.

be fined not more than $10,000 or imprisoned not more than ten years, or both." 52 Stat. 197, 18 U. S. C. § 80, now 18 U. S. C. (Supp. V) § 287.

The indictments show that it is the false claims clause that is involved. And, what is more important to the issue here, the offense defined by that clause is the kind of offense at which the Suspension Act is directed.

The Suspension Act provides that—

"When the United States is at war the running of any statute of limitations applicable to any offense (1) involving fraud or attempted fraud against the United States or any agency thereof in any manner, whether by conspiracy or not . . . shall be suspended until three years after the termination of hostilities as proclaimed by the President or by a concurrent resolution of Congress." 18 U. S. C. (Supp. V) § 3287.

In determining the kind of offenses to which that section applies, we have the benefit of the conclusion heretofore reached by this Court that such offenses are limited to those which include fraud as an essential ingredient.[13] The next question is what constitutes the required fraud. Our problem is simpler than in the *Bridges* case and in those cases which involve violations of the *false statement clause* of the False Claims Act. In those cases there is a question whether the mere making of a false statement in the connection specified necessarily includes the ingredient of fraud required by the Suspension Act. In the instant cases that question is not involved because the offenses include more than that. The substantive offenses here charged include the making of claims upon the Government for payments induced by knowingly false repre-

---

[13] *United States* v. *Scharton,* 285 U. S. 518; *United States* v. *McElvain,* 272 U. S. 633; *United States* v. *Noveck,* 271 U. S. 201.

sentations—constituting violations of the *false claims clause* of the False Claims Act. The statement of the offenses here carries with it the charge of inducing or attempting to induce the payment of a claim for money or property involving the element of deceit that is the earmark of fraud.[14] The false statement clause contains no such ingredient. The difference between the clauses is emphasized in the 1948 codification which has placed the former in § 287 and the latter in § 1001 of 18 U. S. C. (Supp. V).

We conclude that the Wartime Suspension of Limitations Act has added time within which to prosecute the wartime frauds involved in violations of the false claims clause of the False Claims Act.

Appellees have placed emphasis also upon the following statement by Mr. Justice Roberts, speaking for the Court, in *United States* v. *Scharton,* 285 U. S. 518, 521–522:

> "Moreover, the concluding clause of the section, though denominated a proviso, is an excepting clause and therefore to be narrowly construed. *United States* v. *McElvain,* 272 U. S. 633, 639. And as the section has to do with statutory crimes it is to be liberally interpreted in favor of repose, and ought not

---

[14] The *false statement clause* of the False Claims Act, which was involved in *Marzani* v. *United States,* 83 U. S. App. D. C. 78, 168 F. 2d 133, affirmed by an equally divided Court, 335 U. S. 895, 336 U. S. 922, provides merely that "whoever shall . . . make . . . any false or fraudulent statements or representations . . . in any matter within the jurisdiction of any department or agency of the United States or of any corporation in which the United States of America is a stockholder . . . shall be fined not more than $10,000 or imprisoned not more than ten years, or both." 52 Stat. 197, 18 U. S. C. § 80, now 18 U. S. C. (Supp. V) § 1001. Cases arising under that clause need not be discussed here and the references made in them to offenses arising generally under the False Claims Act should be read as referring to its false statement clause rather than to its false claims clause or to the Act as a whole.

to be extended by construction to embrace so-called frauds not so denominated by the statutes creating offenses."

Appellees argue that this language limits the Suspension Act not merely to those offenses in which fraud upon the United States is an essential ingredient, but to such of those offenses as Congress has "denominated" as "frauds" by using that very word or, at least, one of its derivatives.

We believe that Congress sought by its phrase "involving fraud . . . in any manner" [15] to make the Suspension Act applicable to offenses which are fairly identifiable as those in which fraud is an essential ingredient, by whatever words they be defined, and that Congress did not seek to limit its applicability to such of those identifiable offenses as also are labeled with a particular symbol. In the false claims clause of the False Claims Act, Congress met the requirement by identifying the offense as that of making "any claim upon . . . the United States . . . knowing such claim to be false, fictitious, or fraudulent . . . ." [16] The combination of either falsity, fiction or fraud with the claim is enough. The same reasoning applies to a conspiracy to make false claims, as alleged in No. 636.

2. *The Wartime Suspension of Limitations Act extended the time for finding the indictments through 1952.*

A. The Suspension Act had the effect of extending through 1952 the time for the prosecution of the offenses to which it applied.

When enacted August 24, 1942, during the first year of World War II, it provided for the inception and expira-

[15] 18 U. S. C. (Supp. V) § 3287.
[16] 52 Stat. 197.

tion of its effect on existing statutes of limitations as follows:

> ". . . *the running of any existing statute* of limitations applicable to offenses involving the defrauding or attempts to defraud the United States or any agency thereof, whether by conspiracy or not, and in any manner, and now indictable under any existing statutes, *shall be suspended until June 30, 1945, or until such earlier time* as the Congress by concurrent resolution, or the President, may designate. . . ." (Emphasis supplied.)    56 Stat. 747–748.

There is no doubt as to the meaning of the word "running" in that enactment. The running of any existing statute of limitations simply was to be suspended until June 30, 1945—that is, for about three years—unless such suspension was cut short by Congress or the President. The obvious purpose was to add about three years (or a shorter wartime period) to the time otherwise available for the prosecution of certain wartime frauds.

The present difficulty was introduced by the amendment of July 1, 1944. It added not only specific language as to war contracts but it changed the expiration clause to read—

> "*The running of any existing statute of limitations* applicable to any offense . . . (1) involving defrauding . . . the United States . . . or (2) committed in connection with the . . . performance . . . of any contract . . . related to the prosecution of the present war . . . *shall be suspended until three years after the termination of hostilities in the present war as proclaimed by the President or by a concurrent resolution of the two Houses of Congress.* . . ." (Emphasis supplied.)    58 Stat. 667.

The effect of this language, when read with the Act of 1942, is inescapable. The phrase as to "running of any existing statute of limitations" remains precisely as it was in 1942, but the expiration date of the suspension is changed from June 30, 1945 (or an earlier date to be designated by Congress or the President), to a new date. The new date is not fixed as one to come three years later. It is made a movable date which can occur only three years *after* the date of the termination of hostilities as proclaimed by the President or Congress. Under the 1942 Act, the running of the general three-year statute was suspended for three years or less. Under the 1944 amendment, the running is just as clearly suspended until three years has expired *after* the termination of hostilities.

The precise language of the July 1, 1944, amendment was reenacted October 3, 1944, when a clause was added dealing with offenses connected with the handling of property under the Surplus Property Act of 1944, 58 Stat. 781. The language was then carried into 18 U. S. C. § 590a.

When the President, December 31, 1946, proclaimed the termination of hostilities of World War II, 3 CFR, 1946 Supp., 77–78, this automatically caused the resumption of the running of statutes of limitations on December 31, 1949. Accordingly, in relation to the instant offenses committed in 1945 and 1946, during the period of suspension, the general three-year limitation prescribed by 18 U. S. C. (Supp. V) § 3282 began to run for the first time on January 1, 1950, and expired December 31, 1952.

*United States* v. *Smith,* 342 U. S. 225, held that the offenses to which the Suspension Act applied were only those actually committed *before* the termination of hostilities December 31, 1946. The length of the period for their prosecution was not there in controversy because the offenses occurred in 1947. That period, however, was

mentioned either directly or by implication in the concurring and dissenting opinions published on behalf of a majority of the members of the Court. The following statement was made in the concurring opinion:

"These cases clearly illustrate that the suspension statute was not intended to and should not embrace offenses committed subsequent to December 31, 1946. It applies only to offenses committed between August 25, 1939, and December 31, 1946. For those offenses which occurred between the date of the 1942 Act and the cessation of hostilities, Congress' intention was to give the Department of Justice six years from the latter date to investigate and prosecute. For those offenses which occurred before the date of the 1942 Act, Congress' intention was to give the Department three years after the cessation of hostilities plus whatever portion of the regular three-year limitations' period had not yet run when the 1942 Act was passed." P. 231.

This issue was before the Court in No. 527, *United States* v. *Klinger,* which this day is affirmed by an evenly divided Court, 345 U. S. 979. In that case, however, there was presented not only this issue but also an issue as to whether the offense charged was one involving fraud of a pecuniary nature upon the United States.

B. The codification of the Criminal Code, June 25, 1948, effective September 1, 1948, did not change the situation. It repealed the Suspension Act, as amended October 3, 1944, by reference to it as § 28 of Chapter 479, 58 Stat. 781, and as 18 U: S. C. § 590a. 62 Stat. 862, 868. At the same time, Congress substantially reenacted the Suspension Act as 18 U. S. C. (Supp. V) § 3287. 62 Stat. 828. The appellees point out that the saving clause in § 21 of the Act of June 25, 1948, 62 Stat. 862, saves only substantive rights and liabilities then existing under the

repealed sections. They suggest also that any extended periods of limitation resulting from the Suspension Act were thus repealed as of September 1, 1948, leaving applicable the general three-year statute of limitations which would terminate the period for prosecution September 1, 1951. We do not agree with that suggestion. The reenactment of the Suspension Act as § 3287, June 25, 1948, effective September 1, 1948, like the reenactment of the general three-year statute of limitations as § 3282, carried with it the purpose of the codification. That purpose makes §§ 3287 and 3282 applicable not merely prospectively to subsequent offenses, but forthwith to existing offenses in the same manner and with the same effect as if the reenacted provisions had remained continuously in effect in their substantially identical precodification form. Codification contemplates, implies and produces continuity of existing law in clarified form rather than its interruption.

The motions to dismiss the indictments should have been denied. The judgment of the District Court therefore is reversed and the cause is remanded for further proceedings consistent with this opinion.

*Reversed and remanded.*

MR. JUSTICE BLACK, MR. JUSTICE FRANKFURTER and MR. JUSTICE DOUGLAS, adopting the reasoning in the opinion of Judge Learned Hand in *United States* v. *Klinger,* 199 F. 2d 645, would affirm the District Court in dismissing these indictments.

MR. JUSTICE JACKSON took no part in the consideration or decision of this case.