UNITED STATES of America

v.

Harry H. GOLDBERG and J. Jacob Shannon & Co., a Corporation.

No. 12544.

United States District Court
E. D. Pennsylvania.

June 14, 1956.

Alan J. Swotes, Asst. U. S. Atty., Philadelphia, Pa., for plaintiff.

Robert H. Malis, Philadelphia, Pa., for defendants.

VAN DUSEN, District Judge.

This case is before the court on defendants' motion to dismiss under Rule 12(b),

28 U.S.C.A., said motion being based on two grounds: first, that the complaint fails to state a cause of action and, second, that the action is barred by the statute of limitations.

The amended complaint contains two alleged causes of action and each will be treated separately.

## I. *The First Cause of Action*

■ The first cause of action is based on 31 U.S.C.A. §§ 231–232.[1] Defendants have presented to the court no matters outside of the pleadings; therefore, all well-pleaded allegations of the complaint must be deemed admitted for the purposes of this motion. Noerr Motor Freight v. Eastern R. R. Presidents Conference, D.C.E.D.Pa.1953, 113 F.Supp. 737, 742.

■ Briefly stated, the facts allegedly constituting the first cause of action are as follows:

1. Defendant J. Jacob Shannon & Co. (hereinafter called Shannon) leased to the Office of Surplus Property of the United States Government a certain warehouse in the City of Philadelphia.

2. The lease was for the period commencing July 16, 1945, and ending June 30, 1946; the annual rental consideration thereunder was $30,000, payable in monthly instalments of $2,500 each.

3. The lease was signed by defendant Harry H. Goldberg, the President of Shannon, and W. R. Thomas, Jr., Acting Regional Director, Region No. 3, Office of Surplus Property.

4. At the time the lease was entered into, Goldberg knew that the Government was prohibited by law from entering into a lease wherein the annual rental to be paid by it was in excess of 15% of the "fair market value" of the property.

5. During the lease negotiations, Goldberg represented the fair market value of the property as $200,000 when, in fact, said value was "substantially less" and Goldberg knew this.

6. Pursuant to requests of representatives of the Office of Surplus Property, Goldberg submitted two written appraisals of the property to the Government, both stating that its value was in excess of $200,000.

7. The written appraisal made by one Harry Stein represented that said Stein was the licensed appraiser for certain banks. This statement was false and Goldberg knew it to be false.

8. Also, Goldberg submitted to the Government a letter addressed to him by a Philadelphia real estate dealer; this letter stated that the dealer had a client who was interested in purchasing the property for $200,000. This statement was false and Goldberg knew it to be false.

9. The Government entered into the lease, relying on these representations and without knowledge that they were false.

10. Under the lease, the Government paid Shannon ten monthly rental payments of $2,500 each.

It is the Government's theory that each monthly claim of the defendants for rent was a false claim and each appraisal and supporting document in connection therewith was a false certificate within the meaning of 31 U.S.C.A. §§ 231–232.

Whether or not each of the ten monthly claims for rent constituted fraud depends

1. "Any person * * * who shall make or cause to be made * * * to * * * any person or officer in the civil * * * service of the United States, any claim upon or against the Government of the United States * * * knowing such claim to be false, fictitious, or fraudulent, or who, for the purpose of obtaining or aiding to obtain the payment or approval of such claim, makes, uses, or causes to be made or used, any false * * * certificate * * * knowing the same to contain any fraudulent or fictitious statement or entry * * * shall forfeit and pay the United States the sum of $2,000, and, in addition, double the amount of damages which the United States may have sustained * * *." Abridged quotation from 31 U.S.C.A. § 231.

upon whether or not the lease negotiations were tainted with fraud.

This first cause of action being founded on fraud, the provisions of Rule 9(b) become applicable. This Rule provides, in part, as follows:

"In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity."

The complaint alleges that Harry Stein stated that he was a licensed appraiser for certain banks and that this was untrue and defendants knew it to be untrue. This would be a misrepresentation; however, it may be that this alleged misrepresentation would not be of sufficient materiality as to constitute fraud.[2] On the state of the record, it is impossible to decide this question.[3]

An additional fraud alleged is the presentation by Goldberg to the Government agents of the letter of the real estate dealer stating that the latter had a client who was interested in purchasing the property for $200,000. If this was untrue, as alleged, and Goldberg knew it to be untrue, it would appear to be a material misrepresentation constituting fraud. Thus, the Government is entitled to go to trial on its claim that the submission of this letter constituted a false certificate.

The complaint also alleges that Goldberg represented to the Government that the value of the property was $200,000, that this representation was untrue, and that Goldberg knew it to be untrue. If sustained by the proofs, this would clearly constitute a fraudulent misrepresentation; a coupling of this alleged fraud with those discussed above would taint the monthly claims for rent and make each of them fraudulent. Therefore, defendant's motion to dismiss as to the first cause of action must be denied.

One further question remains to be decided: namely, defendants' contention that the statute of limitations bars the present action. It will suffice to say that this argument has been thoroughly discussed in the federal courts. Citation of the following cases refutes defendants' contention: United States ex rel. Marcus v. Hess, 1943, 317 U.S. 537, 63 S.Ct. 379, 87 L.Ed. 443; Rex Trailer Co. v. United States, 1956, 350 U.S. 148, 76 S.Ct. 219, 100 L.Ed. 149. See also United States v. Grainger, 1953, 346 U.S. 235, 73 S.Ct. 1069, 97 L.Ed. 1575; United States v. Covollo, D.C.E.D.Pa.1955, 136 F.Supp. 107.

## II. *The Second Cause of Action*

The Government's second cause of action is based on the theory that if the rentals paid under the aforementioned lease were in excess of that authorized under 40 U.S.C.A. § 278a,[4] any sums paid "illegally and erroneously" in excess of the amount so authorized are recoverable by the sovereign.

Defendants argue that 40 U.S.C.A. § 278a is merely regulatory and thus directed to the Government alone and cite in support of this position the case of Girard Trust Co. v. United States, 3 Cir., 1945, 149 F.2d 872. However, that case

---

2. See 5 Williston, Contracts, § 1490.

3. It would seem that the complaint does not satisfactorily allege fraud on the part of either of the two appraisers in their statements as to value. These statements merely reflected the opinions of the appraisers that the value of the premises exceeded $200,000. There is no allegation of bad faith on the part of these men. See In re Bowen, D.C. E.D.Pa.1944, 58 F.Supp. 286, affirmed 3 Cir., 1945, 151 F.2d 690. However, the proofs may reveal that the appraisers' opinions were greatly affected by statements made to them by defendants or other significant facts.

4. "* * * no appropriation shall be obligated or expended for the rent of any building or part of a building to be occupied for Government purposes at a rental in excess of the per annum rate of 15 per centum of the fair market value of the rented premises at date of the lease under which the premises are to be occupied by the Government nor for alterations, improvements, and repairs of the rented premises in excess of 25 per centum of the amount of the rent for the first year of the rental term, or for the rental term if less than one year * * *." 40 U.S.C.A. § 278a.

involved a question of the interpretation of a lease, and since such a problem is not here presented, the Girard Trust Co. case is not in point.[5]

Defendants further argue that 40 U.S.C.A. § 278a provides no authority for the recovery of the moneys claimed by the Government. However, it is clear that no such statutory authority is required to allow the Government to recapture funds "wrongfully, erroneously, or illegally paid." See United States v. Wurts, 1938, 303 U.S. 414, 58 S.Ct. 637, 638, 82 L.Ed. 932.

▪ Defendants also contend that the provisions of 40 U.S.C.A. § 278a are inapplicable to the Office of Surplus Property. In support thereof, they quote various sections of the Surplus Property Act, 50 U.S.C.A.Appendix, § 1622, each prefaced by the phrase "notwithstanding any other provisions of law" or similar language. It will suffice to say that the sections so cited by defendants are not germane to the problem here presented and are thus not in point.

▪ The defendants' main argument is that there is no mistake of fact in the present case that would justify the relief sought. It is the defendants' position that they and the Government were engaged in arms' length dealings, that information as to the fair market value of the leased property was equally available to all parties, and that the Government cannot now complain of a bad bargain. It is generally accepted that a mistake as to value cannot be the basis of an action for recision or similar suits.[6] The Government suggests, however, that the

sovereign is not bound by the "illegal or erroneous acts of its officers and may recover money paid by them through mistake of law or fact."[7] The cases cited in the Government's brief in support of this position appear distinguishable from the instant case. The mistakes there involved were of basic assumptions of the parties and were not the subjects of negotiations.[8] In the present case, however, it appears that the question of the value of the leased premises was thoroughly discussed by the parties to the agreement.

▪ However, the instant case is complicated by the provision of 40 U.S.C.A. § 278a, which *forbids* the expenditure of moneys for the rental of a building if said annual rental is in excess of 15% of the fair market value of the premises. The legislative intent is not apparent from available sources. However, it seems unlikely that Congress intended to put an almost impossible burden on the lessor; that is, to subject him to future claims by the Government that the fair market value of the premises was not as bargained for at the negotiating table. Although the Government contends that the situation here presented is not unlike that existing in contracts containing renegotiation provisions, renegotiation provisions are directed at situations where events in the future are uncertain. In this case, however, it is a fact present and existing at the time of contracting that is questioned, not a future happening. Therefore, it may well be that defendants are entitled to have the second cause of action asserted by the Government dismissed.

---

5. In the Girard Trust Co. case, the plaintiff-lessor sought to recover from the Government sums expended in repairing a building occupied by the Government as lessee. The Government contended that such payments were barred by a provision of 40 U.S.C.A. § 278a, which states that no expenditure shall be made for repairs in excess of 25% of the first year's rental and that the sums there sought would be in excess of said limitation. The court pointed out, however, that the lease there involved provided

that repair expenses were to be paid by the Government-lessee as "part of the rental consideration" and, when the agreement was so interpreted, the statutory provision relied upon had no applicability.

6. See 3 Corbin, Contracts, § 605.

7. Plaintiff's Brief in Opposition to Defendants' Motion to Dismiss, p. 5.

8. See Restatement of Restitution, § 9, comment (c), § 11.

However, it is not necessary to take this step on the present state of the record. It is impossible to say what the proofs will be. Therefore, defendants' motion to dismiss as to the second count will also be denied.