**UNITED STATES of America,
Appellant,**

v.

**E. B. HOUGHAM, Owen Dailey, William
E. Schwartze and Harlan L. Mc-
Farland, Appellees.**

**E. B. HOUGHAM, Owen Dailey, William
E. Schwartze and Harlan L. Mc-
Farland, Appellants,**

v.

**UNITED STATES of America,
Appellee.**

**No. 15873.**

United States Court of Appeals
Ninth Circuit.

April 14, 1959.

Rehearing Denied Sept. 23, 1959.

See also 148 F.Supp. 715.

George Cochran Doub, Asst. Atty. Gen., Morton Hollander, Hershel Shanks, Attys., Dept. of Justice, Washington, D. C., Laughlin E. Waters, U. S. Atty., Richard A. Lavine, Asst. U. S. Atty., Los Angeles, Cal., for appellants.

Conron, Heard & James, Calvin H. Conron, Jr., Bakersfield, Cal., for appellee.

Before FEE, BARNES and HAMLIN, Circuit Judges.

JAMES ALGER FEE, Circuit Judge.

This action was instituted to recover damages on account of the fraudulent acquisition of surplus property in viola-tion of the provisions of the Surplus Property Act of 1944.[1] It was claimed that defendant E. B. Hougham, individually and under the assumed business name of Baker's Motor Market, had Owen Dailey, William E. Schwartze and Harlan L. McFarland, the other defendants, purchase for him surplus property vehicles from the government. These purchases were charged to have been accomplished by the use of priority certificates of veterans which belonged to the other defendants, respectively. It was claimed that Hougham could not otherwise have obtained title to such vehicles.

The record showed that each of the defendant veterans filed with the War Assets Administration an application for a certificate to enable him to purchase war surplus material on a priority basis. Upon the representations in the applications filed by these veterans, priority certificates were issued to each respectively. In each application presented by a defendant veteran, there was a representation reading as follows:

"I am, or will be, directly or indirectly, the sole proprietor of the enterprise described herein, or, that no person or persons, other than veterans, have or will have any proprietary interest in the enterprise, singly or together, directly or indirectly, in excess of 50 per cent of either the capital invested in the enterprise or of the gross profits or income thereof; * * * that said property is to be used in and as part of the enterprise described herein."

The evidence also proved that Hougham had a large establishment and that defendant veterans were financed by him to purchase the property on the priority certificates; the vehicles were delivered to Hougham, who treated them as his own; the veterans received $10.00 from Hougham.

The cause was tried by the court without a jury. A judgment was entered

---

1. 58 Stat. 765, 50 U.S.C.A. §§ 1611–1616, now 40 U.S.C.A. § 471 et seq.

against Hougham and Dailey for $2,000.-00, against Hougham and Schwartze for $2,000.00, and against Hougham and McFarland for $4,000.00. These sums were described as "liquidated damages." The court ruled that the government had presented no proof of actual damage.

■ A major point raised is whether the action is barred by the Statute of Limitations. The court ruled that no statutory provision was applicable to bar the action.

It was claimed that the bringing of the action was limited by 28 U.S.C.A. § 2462, which reads:

"Except as otherwise provided by Act of Congress, an action, suit or proceeding for the enforcement of any civil fine, penalty, or forfeiture, pecuniary or otherwise, shall not be entertained unless commenced within five years from the date when the claim first accrued if, within the same period, the offender or the property is found within the United States in order that proper service may be made thereon."

The trial court ruled that the section above quoted did not apply and that, since the Surplus Property Act of 1944 contained no provision for limitation, the action therein authorized could be commenced at any time. It is significant in this connection that the trial court gave judgment for $2,000.00 for each act.

The exact point has been ruled upon by the Court of Appeals for the Third Circuit in the case of United States v. Doman, 255 F.2d 865, 867, where it is said:

"The narrow issue, therefore, is whether Section 26(b) (1) of the Surplus Property Act, which requires a person committing the prohibited act to pay the United States the sum of two thousand dollars for each fraudulent act in addition to double the amount of any damages which the United States may have sustained by reason of Koller's and Silberbrook's activities provides a civil fine, a penalty, or a forfeiture, or merely compensatory damages."

That court, citing the opinion of Judge Jertberg in the instant case, pointed out that the Supreme Court of the United States, in Rex Trailer Co. v. United States, 350 U.S. 148, 76 S.Ct. 219, 100 L.Ed. 148, had held that the provisions of Section 26(b) (1) are civil and not criminal, although the point of limitation upon an action was not involved, but concluded the later opinion resolved the conflict among the circuits as to the existence of a bar. This Court accepts that solution.[2]

■ It may be noted, however, that the acts here for which defendants were held liable were committed sometime between March 16 and September 30, 1946, by the filing of respective priority certificates, while the first complaint was filed December 31, 1954. Even if 28 U.S.C.A. § 2462 were applicable, this complaint was timely.[3]

■ Defendants claim that the Statute of Limitations is particularly important because of the filing of an amended complaint on November 2, 1956. The amended complaint did vary from the original in two particulars. First, the charge of fraud in the original complaint was an alleged false representation that the articles were purchased for personal use of the veteran. The allegation in the second amended complaint was to the effect that the false representation was that the veterans were the owners of more than fifty per cent of the interest in an enterprise and entitled to more than fifty per cent of the profit therein and that the purchase for resale was not for the benefit of any

2. See also United States v. Barish, 3 Cir., 256 F.2d 571.

3. 28 U.S.C.A. § 2462, 18 U.S.C.A. § 3287; Proclamation No. 2714, 12–FR–1, 50 U.S. C.A.Appendix, § 601 note; United States v. Grainger, 346 U.S. 235, 73 S.Ct. 1069, 97 L.Ed. 1575. The government had the full day of December 31, 1954, in which to file the complaint, since hostilities were suspended at noon December 31, 1954.

other dealer. The trial court ruled that the first complaint stated a cause of action under the governing statute. We agree and so rule. The minor variation as to the detail of the fraud is not of the essence. Therefore, whether the statute had run when the second amended complaint was filed is of no consequence. The filing of the first complaint in time tolled the running of any applicable statute as to the point.

■■ Second, it is objected that the government sought to claim twice the consideration agreed to be paid in the second amended complaint, whereas in the first complaint it had prayed for $2,-000.00 for each act and double the amount of the damages of the government. There are two answers. One, the court only awarded $2,000.00 liquidated damages to the government for each act found. Defendants have no ground to complain, since this measure of recovery was asked by the first complaint. Two, there was only one statutory remedy, as defendants claim. The amount of recovery prayed for had no effect upon substance of the claim. If a cause of action was stated, based upon the statute, the amount of recovery would be based upon the proof. The statute gave the United States three different measures of damages. Under the Federal Rules of Civil Procedure, 28 U.S.C.A. at the end of the trial the government would be entitled to that which the court found was established by the evidence.

■ And here it may be well to dispose of the appeal of the government. The claim is that, since there was an election by the agents of the United States under the terms of the statute to claim twice the consideration agreed to be paid, the trial court was bound by the statute to make such an award.

This has been treated as an attempt to bind the government to an election of remedies. As above noted, there is no such question involved here. There is but one statutory cause of action. Based upon the proof at the end of the case, the government could recover damages in one of three forms. These damages in the three sections were not cumulative. The reason for the words at the election of the government is to show the non-cumulative nature of the provisos. If these words mean that the government is entitled to the particular form of relief it chooses, willy-nilly, regardless of the evidence, and that the court can award that form and no other, unquestionably the proviso constitutes a criminal penalty and the courts which have construed these clauses as providing liquidated damages are wrong. But we have already rejected this thesis.

Since then these provisos give liquidated damages in various forms, the trial court had the power to give that form of relief to which he believed the government was entitled. He found the government had proved no actual damages. Therefore, he applied the simple monetary award for each of the proven acts of presentation of a priority certificate.

This question was not raised at the trial. The trial court unquestionably believed that twice the consideration "agreed to be paid" was not applicable here. And it seems much more apposite to a contract where the property has not passed but a consideration has been agreed upon. It cannot be said upon the record before us that the trial court reached an erroneous conclusion as to the amount of the liquidated damages which were awarded. The cross-appeal of the government has no merit.

Defendants object that the proof was not sufficient to make a case against any of them. A careful review of the record shows that the trial court correctly held "from all of the evidence that as far as these three men [Dailey, Schwartze and McFarland] it [their interest] was purely synthetic * * * these men were largely messenger boys in acquiring the surplus vehicles that Mr. Hougham felt he could use in his business." The findings of the trial court were correct. It is unnecessary to burden the reports with a detail of the facts.

Affirmed.